UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELBERT BEST, III,            ) | |
| ) | |
| Plaintiff,            ) | |
| ) | |
| vs.            ) | 2:06-CV-01169-LSC |
| ) | |
| NGC INDUSTRIES, INC.,            ) | |
| ) | |
| Defendant.            ) | |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, NGC Industries, Inc. ("NGC"), on July 9, 2007. (Doc. 24.) Plaintiff Elbert Best ("Best") has sued NGC for racial discrimination and retaliation with respect to his termination and prior attempts at promotion under Title VII and 42 U.S.C. § 1981 ("§ 1981"). (Doc. 1.) NGC has moved for summary judgment on all of Plaintiff's claims. The issues raised in NGC's motion for summary judgment have been briefed

by both parties and are now ripe for consideration.[1]  Upon full consideration of the legal arguments and evidence presented, NGC's motion for summary judgment will be granted in part and denied in part.

II.   Facts.[2]

Elbert Best, an African-American male, began his employment with NGC Industries, Inc., on July 2, 1996, in the machine department at NGC's Anniston, Alabama, facility.  NGC manufactures paper used to produce wallboard.  Machine department employees generally advance through job positions as follows: (1) First Hand, (2) Second Hand, (3) Third Hand, (4) Back Tender, (5) Utility Man, and (6) Machine Tender.   Prior to his

---

[1] NGC has filed a Motion to Strike Gary Poe's Declaration (Doc. 30) in conjunction with it's briefing of the issues in this matter.  The motion will be denied.  The Court has noted and considered NGC's arguments regarding portions of Poe's declaration, and in many instances, the Court agrees that statements made by Poe in his declaration are immaterial, conclusory, and/or made without personal knowledge.  However, the materiality, relevancy, and potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process.  Immaterial evidence, irrelevant evidence, and other evidence that could not be reduced to admissible form at trial, *see Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999), was rejected by this Court when making its final decision on Defendant's summary judgment motion.

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

termination from employment at NGC on October 13, 2005, Best worked as a First Hand, Second Hand, Third Hand, and Back Tender. The parties agree that Best repeatedly inquired into various promotional opportunities during his tenure at NGC, but Best admits that he was not qualified for a supervisory role until he became a Third Hand on April 5, 1999. Best also complained to members of management about the lack of African-Americans in supervisory positions at the Anniston plant.

In or around 2005, one of the Production Supervisors began discussing his plans for retirement. The Production Relief position is the job below Production Supervisor, and employees typically hold the Relief position before a promotion to Production Supervisor. Best expressed his interest in the Production Relief position, which was expected to come open in the probable instance that the current Relief holder took the Production Supervisor position. He also asked to be considered for the Production Supervisor position. Neil Stephenson, Director of Paper Operations, promised Best that he would receive the next available Production Relief position.

Best later heard a rumor that management had voted to give a

Production Relief position to Eddie Dempsey, a white employee. On October 5, 2005, Best complained about the rumor to his supervisor, Randall Talley. The exchange became heated, and Best admits that he cursed during the conversation, though he denies he cursed at Talley. Immediately thereafter, a paper break occurred, which causes a significant loss of production. Best and Talley then argued over whether Best would perform a job duty that Best admits he had "always" done on his shift, though he contends it was another employee's job. Talley told Best to get a motor, and Best told Talley to leave him alone. (Best Dep. at 169-71.)

Best was suspended later that day pending an investigation into his language and conduct toward his supervisor. NGC claims that union officials and management repeatedly told Best that he needed to apologize to Mr. Talley for his conduct. Best testified he does not remember if he was told to apologize, but he "wasn't going to apologize for something that [he] didn't do." (*Id.* at 203.) He met with Talley and thought they had worked things out. Best was terminated from employment with NGC on October 13, 2005. He had no prior disciplinary record, except for absences, which NGC admits had no bearing on the discharge decision.

Best initiated a grievance procedure through the union, and the union decided not to pursue the matter further. Best then filed a charge of discrimination with the Equal Employment Opportunity Commission and instituted this action on June 15, 2006.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

   A.   Race Discrimination in Promotion.

Best argues that NGC illegally discriminated against him based on his race because he was denied promotions to the Production Relief position "held by [David] Meharg and sometimes filled in by Dempsey," and the Production Supervisor Position ultimately filled by Meharg. (Doc. 29 at 29.)

Plaintiff's argument in response to NGC's motion for summary judgment on this issue, however, is perfunctory and lacks any citation to authority. According to the law of this circuit, then, the argument is waived. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument).

Moreover, even if this Court did not conclude that Best waived his promotions claim, NGC has shown that summary judgment is due to be granted because Best cannot establish a prima facie case of discrimination. Because Best has not asserted that he has direct evidence of discrimination with regard to his attempts at promotion to these two positions, we analyze his claim using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). First, the plaintiff must establish a prima facie case of discrimination. "To establish his prima facie case of discriminatory failure to promote, [Best] must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position and (4) someone outside of the

protected group was given the position." *Id.* (citing *Coutu v. Martin County Bd. of County Commiss'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995)). The position in question must be an available position for which the employer seeks applicants. *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). The prima facie case, once established, creates a presumption of discrimination, which the employer must rebut with legitimate, nondiscriminatory reasons for the employment action(s) at issue. "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Standard*, 161 F.3d at 1331.

With regard to the Production Supervisor position ultimately filled by Meharg, Plaintiff neither alleges nor establishes in his argument that he was qualified for that position. (Doc. 29 at 29-30.) Further, the undisputed evidence shows that the individual in that position did not retire until March 1, 2006, and Meharg then received his promotion. Because Best was terminated from employment in October 2005, this position was not available to him.

Best's lack of employment status also precludes him from pursuing a failure to promote claim for the Production Relief position "held by Meharg."[3]  It is undisputed that Best was promised this position prior to his termination.  However, the position was not open and available until Meharg was promoted to fill the Production Supervisor position in March 2006.

B.   Race Discrimination in Termination.

Best also argues that his October 2005 discharge was discriminatory and a violation of both Title VII and § 1981.  Best supports his claim with circumstantial evidence; therefore, we turn again to the *McDonnell Douglas* framework to analyze his disparate discipline claim.  *Standard*, 161 F.3d at 1331.  NGC contends that Best cannot establish a prima facie case of discrimination because he has no evidence that a similarly situated non-minority employee engaged in "nearly identical" misconduct.  (Doc. 26, Ex. 12 at 28.)

---

[3]To the extent Plaintiff seeks to pursue a failure to promote claim because Meharg, and not Best, was promoted to the Production Relief position in 1997, that claim is clearly time-barred.  *See Hithon v. Tyson Foods, Inc.*, 144 Fed. Appx. 795, 799 (11th Cir. 2005) (unpublished opinion).

As part of his prima facie case, Best "must show that his employer treated similarly situated employees outside his classification more favorably than [himself]." *Holyfield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995)). "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Id*; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id*. "The most important factors in the disciplinary contexts are the nature of the offenses committed and the nature of the punishments imposed." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied*, 535 U.S. 1013 (2002) (ellipses omitted). "In order to satisfy the similar offenses prong, the comparator's misconduct must be *nearly identical* to the plaintiff's in order 'to prevent courts from second-

guessing employer's reasonable decisions and confusing apples with oranges.'" *Id.* (citing *Maniccia v. Brown,* 171 F.3d 1364, 1368-69 (11th Cir. 1999)) (emphasis added); *see also Burke-Fowler v. Orange County, Florida,* 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) (reaffirming the "nearly identical" requirement despite one panel's conclusion that only "similar" misconduct is required). It is "require[d] that the quantity and quality of the comparator's misconduct be nearly identical." *Maniccia,* 171 F.3d at 1368. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holyfield,* 115 F.3d at 1562.

NGC contends that Best was terminated for "repeatedly using threatening and abusive language and conduct toward a supervisor, failing to follow a directive from the same supervisor[,] and refusing to apologize for his behavior." (Doc. 26, Ex. 12 at 28.) This is also NGC's asserted legitimate, nondiscriminatory reason for Best's discharge. Best disputes the nature of the conduct he is accused of and contends that he did not threaten or curse at his supervisor, did not refuse to follow a directive, and he talked with his supervisor and thought they had things worked out.

"[O]ur inquiry[, however,] is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). NGC has produced evidence that Best was terminated for insubordination, which included alleged "abusive language and aggressive conduct" toward his supervisor and telling his supervisor, "get out of my face," when told to do his job. In his deposition, Best himself admits that he told his supervisor to leave him alone when he was asked to get a motor during a paper break, and Best says he and his supervisor both cursed throughout the disagreement.

However, Best argues that Rowan Bussey, a white employee, was disciplined less severely for "nearly identical" conduct. Bussey's Employee Disciplinary Action Form, dated September 20, 2004, shows that Bussey was suspended for one week for "gross insubordination" after an exchange with his supervisor, in which Bussey twice refused to complete a form he was told to sign and said, "tell them to kiss my ass."

NGC does not devote any of its argument in its legal memoranda to distinguishing the conduct of Bussey and Best. At this juncture, it is the defendant's burden to show the absence of material fact on this issue. The

Court notes that NGC listed in its facts section that Bussey, "profusely apologized" when he met with management after his suspension. (Doc. 26, Ex. 12 at 21.) However, the apology is neither mentioned in Bussey's Disciplinary Action Form, and a lack of apology is not discussed in Best's Disciplinary Action Form. NGC also references "threatening" conduct, but does not identify what threats, if any, were made. NGC also has not argued in its memoranda in support of summary judgment that Best's insubordination during the paper break cost the facility money or endangered other employees.

The Court understands that Bussey's and Best's conduct are not identical; however, their conduct does not need to be identical. For the purposes of summary judgment, and viewing the record in the light most favorable to the plaintiff, Best has presented sufficient evidence that a reasonable jury could conclude that the two individuals were similarly situated, and the quantity and quality of their conduct is "nearly identical."

There is also sufficient circumstantial evidence in the record, in addition to the aforementioned disparity in discipline, to create genuine issues of fact regarding whether NGC's alleged legitimate, nondiscriminatory

reason was pretext for race discrimination. Plaintiff has submitted evidence that members of management used the word "nigger" to refer to Best. In fact, there is evidence that one of the members of management involved in the decision to terminate Best asked another employee to speak to Best about a week after the incident on October 5, 2005, and then said to that employee, "What did the nigger want them to do for him?" (Poe Decl. ¶ 5.) Best was terminated on October 13, 2005. And, while the misconduct at issue is not "nearly identical" to that of Best, and therefore could not be considered part of Plaintiff's prima facie case and will not be compared with Best's misconduct, a reasonable jury may also consider the company's reinstatement of Tony Bright after he made a Ku Klux Klan hood and hung a noose in the work area of an African-American employee as evidence of NGC's tolerance of racial animus. Therefore, summary judgment will be denied with regard to Plaintiff's termination claim.

    C.    Retaliation.

Finally, Best contends that his termination from NGC was retaliation for his constant complaints about race discrimination at the Anniston

facility.[4]  In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse . . . action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997); *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1120 N.10 (11th Cir. 2001).  Recently, the U.S. Supreme Court clarified that a plaintiff does not need to suffer employment-related adverse actions.  Rather, federal anti-retaliation provisions encompass any employer actions that would be "materially adverse to a reasonable employee or job applicant."  *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2409 (2006).  There is no dispute, however, that Best's discharge is sufficient to meet the second prong of his prima facie case with regard to his retaliation claims.

NGC maintains that Best cannot establish a prima face case of retaliation because he cannot establish a causal connection between his

---

[4]In his response to summary judgment, Best notes that he is no longer pursuing his retaliatory failure to promote claims.  (Doc. 29 at 29 n.7.)  Therefore, those claims will be dismissed.

complaints and discharge. (Doc. 26, Ex. 12 at 29.)[5] However, NGC does not argue the issue of causation except to summarily conclude that Best's complaints did not cause his termination because his conduct toward his supervisor was the cause of his termination. (Doc. 31 at 9.)

It is undisputed that Best complained about the absence of African-Americans in supervisory positions throughout his career at NGC. The disagreement with his supervisor on October 5, 2005, began with Best's complaint that he had heard a white employee was going to be placed in a supervisory position. Best testified he told his supervisor, "I guess it really is true . . . management just ain't going to never let a black man be a supervisor here." (Best Dep. at 105.) Then, the "Reason For Disciplinary Action" on Best's Disciplinary Action Form begins: "Best confronted his supervisor, Randall Talley, questioning the selection of an employee for a future foreman's position." (Ex. to Best Dep.) To establish a causal connection, a plaintiff "need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs.,*

---

[5] NGC also says in a footnote to its reply submission that it is "questionable whether [P]laintiff engaged in protected activity." (Doc. 31 at 9 n.7.) Given the facts and record presented in this case, however, a reasonable jury could conclude that Plaintiff engaged in statutorily protected activity during his tenure at NGC.

*Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). Viewing this evidence in the light most favorable to the plaintiff, this Court cannot conclude that Plaintiff's complaints regarding the failure of NGC to promote African-Americans to supervisory positions was wholly unrelated to his discharge.

Moreover, this evidence, in combination with the discipline disparities noted between Best and Bussey, a white employee who did not complain of discrimination, is sufficient for a reasonable jury to conclude that NGC's proffered reason for Plaintiff's termination was pretext for unlawful retaliation. Therefore, summary judgment will be denied.

V.   Conclusion.

For the reasons set forth above, NGC's motion for summary judgment will be granted in part and denied in part. A separate order will be entered.

Done this 16th day of October 2007.

                                                L. SCOTT COOGLER
                                  UNITED STATES DISTRICT JUDGE
                                                     124153